# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:18-cr-00164 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| | ) |
| WILFREDO MENDEZ-YOC | ) |

## MEMORANDUM AND ORDER

### I. Introduction

Pending before the Court are Defendant's Motion to Suppress Evidence (Doc. No. 24), and the Government's Response (Doc. No. 27). Through the Motion, Defendant seeks to suppress the firearm found in his pocket by police officers on February 20, 2018; the 15 grams of marijuana found, on that date, in the car he was driving; and the statements he made to officers on that date. The Court held a hearing on the Motion on December 18, 2018.

### II. Evidence Adduced at the Hearing

Rudy Basaldua, an officer with the Metro Nashville Police Department, testified at the hearing that he and his partner, Samuel Kersten, encountered Defendant when they were on patrol in Madison, Tennessee on February 20, 2018. At approximately 5:30 p.m., the officers turned into the Berkley Hills apartment complex and heard loud music coming from inside the complex. Officer Basaldua testified that Officer Kersten, who was driving their marked patrol car, continued driving farther into the complex in search of the source of the music. The officers followed the music to a Nissan Altima that was backed into a parking space. The driver's side

window on the car was rolled down, and the passenger window was up. Officer Basaldua testified Defendant was in the driver's seat.

According to Officer Basaldua, Officer Kersten drove past the space where the Altima was parked and Officer Basaldua exited the vehicle and approached the front passenger window of the vehicle. Officer Kersten parked the patrol car two to three parking spaces away from Defendant's car. Officer Basaldua testified that he intended to let the occupant know that his music was in violation of a state law and Metro ordinance prohibiting excessive noise. At that time, Officer Basaldua testified, he did not stand in front of Defendant's car; he did not yell at Defendant to stop; he did not have his gun drawn; he was not holding a baton; and the overhead lights on the patrol car had not been activated. When Officer Basaldua approached the passenger side window of Defendant's car, Defendant cracked the window slightly. Officer Basaldua testified that he told Defendant, in English, about the noise law and ordinance, and told him to turn the music down. Defendant did so. Officer Basaldua then asked Defendant for his name and Defendant refused to provide that information. According to Officer Basaldua, Defendant spoke in English and appeared to understand what the officer was saying to him.

Officer Basaldua testified he smelled the odor of marijuana emanating from Defendant's vehicle, and described the odor as a "skunked" smell of fresh, not burned, marijuana. Officer Basaldua estimated the strength of the smell to be a six on a ten-point scale. Officer Basaldua testified he did not notice the odor until Defendant cracked the passenger window.

While he was speaking, Officer Basaldua testified, Defendant began to laugh and make movements with his hands in his lap area. Based on his training, Officer Basaldua believed that Defendant was touching his lap because he was attempting to hide something there. Officer

Basaldua testified Defendant's movements made him feel uncomfortable, and he wanted to make sure Defendant was not hiding a weapon.

After asking Defendant for identification approximately five times, Officer Basaldua walked around the rear of Defendant's car to the driver's side window. When he arrived, Officer Basaldua testified, he pulled on Defendant's door handle and told Defendant two to three times to unlock the vehicle and step out. Defendant then opened the door and stepped out of the car, and Officer Basaldua immediately grabbed his hands to gain control of him. Officer Basaldua testified that he began to perform a *Terry* frisk, and Defendant told him he had a gun in his pants. Defendant had to unfasten his pants to remove the gun. Officer Basaldua testified that his basis for performing the frisk was Defendant's movements and his failure to provide identification, both of which were consistent with someone trying to hide something, possibly a weapon.

Officer Basaldua testified he recovered a loaded gun from Defendant's trousers, continued the frisk, handcuffed Defendant, and placed him in the back of the patrol car. At that point, Officer Basaldua testified, they attempted to investigate Defendant's identity, and the source of the marijuana odor. Officer Basaldua testified he eventually learned Defendant's name and that he was 20 years old. According to Officer Basaldua, Officer Kersten advised Defendant of his *Miranda* rights, searched Defendant's car, and found marijuana in a backpack that was on the driver's side floorboard of the car. Officer Basaldua testified he saw the backpack in that location when he frisked Defendant.

Officer Basaldua testified that, after they discovered the gun and marijuana, he advised Defendant of his *Miranda* rights again in connection with filling out the department's gun questionnaire, and asked him the questions listed on the questionnaire. Officer Basaldua further testified that he spoke to Defendant in English, and had no reason to believe Defendant did not

3

understand what he was saying. Defendant signed the form. In answer to one of the questions on the form, Defendant indicated the gun belonged to a black, male individual named "Mr. Edwin." He did not make any admissions regarding the marijuana. Defendant did state that he smoked "weed" occasionally. Defendant was formally charged with possession of marijuana with intent to sell, and possession of a firearm during commission of a dangerous felony.

On cross examination, Officer Basaldua testified he wrote an Incident Report about the encounter with Defendant shortly after the arrest. (Defendant's Exhibit 1). Officer Basaldua testified that he first smelled the odor of marijuana when he approached the passenger side of Defendant's vehicle, and Defendant cracked the window. According to Officer Basaldua, the *Terry* frisk was based on Defendant's refusal to provide identification, his movements on his lap, and the presence of the marijuana odor emanating from the car. Officer Basaldua testified that Defendant eventually revealed his name, and after running a database search, the officer learned Defendant was 20 years old. Officer Basaldua testified that Officer Kersten found two plastic bags of marijuana in the backpack: one bag contained loose marijuana, and the other contained nine individual baggies of marijuana.

Officer Samuel Kersten, also of the Metro Nashville Police Department, testified that, on February 20, 2018, he was driving a squad car on patrol in Madison, Tennessee, with Officer Basaldua. Officer Kersten testified that he turned into the Berkley Hills apartment complex and heard loud music. As they drove through the apartment parking lot, he noticed the music was coming from Defendant's vehicle. According to Officer Kersten, Defendant's car, a white sedan, was backed into a parking space in front of one of the apartment buildings. Officer Kersten testified they had not activated any emergency lights or sirens when they approached Defendant's vehicle.

4

At that point, Officer Kersten testified, he drove past Defendant's car, stopped the patrol car in the street, and Officer Basaldua exited the car. Officer Kersten testified that Officer Basaldua was not brandishing a gun or baton as he approached Defendant. After Officer Basaldua left the patrol car, Officer Kersten parked the patrol car in a parking space two to three spaces away from Defendant's car. When he noticed Officer Basaldua again, Officer Basaldua had moved to the driver's side of Defendant's car. Officer Kersten then made a "CAD" entry of their location and the time, and left his car to assist Officer Basaldua.

At that time, Officer Basaldua was asking Defendant to get out of the vehicle, and Defendant was refusing. Officer Kersten testified that, before he reached the passenger side of Defendant's car, Defendant started to exit. According to Officer Kersten, Officer Basaldua had not yelled at Defendant to stop, had not blocked Defendant, had not brandished his weapon, nor had he touched Defendant. When Defendant got out of his car, Officer Basaldua started to pat him down, and Defendant said he had a pistol in his pants. Officer Kersten testified that Defendant spoke in English. After Officer Basaldua retrieved the gun, one of the officers placed Defendant in the back of the patrol car while they determined his identity and whether he was allowed to possess the gun.

According to Officer Kersten, there was a strong odor of marijuana coming from Defendant's car, and therefore, they knew they had probable cause to search the vehicle. While Defendant was in the patrol car, with the door open and the window down, Officer Kersten stood outside the open door and read Defendant his *Miranda* rights from the card the officer keeps in his pocket for that purpose. Officer Kersten testified that, when asked if he understood his rights, Defendant answered "yes" or "yeah." Officer Kersten testified he had no reason to believe

5

Defendant did not understand what he was saying, or that Defendant did not voluntarily waive his *Miranda* rights.

Officer Kersten testified he then told Defendant they smelled marijuana and had probable cause to search Defendant's car. According to Officer Kersten, when he asked Defendant where they could find the marijuana, Defendant told him it was in a backpack on the floorboard of the driver's side of the car. When he retrieved the backpack and opened it, Officer Kersten found two bags, one with loose marijuana and the other with individually packaged baggies of marijuana. The total amount of marijuana was about 15 grams.

On cross examination, Officer Kersten testified that he smelled the odor of marijuana when he approached the passenger side of Defendant's car, and at that point, Defendant was no longer free to leave. According to Officer Kersten, Defendant was free to leave prior to that time. Officer Kersten testified that he did not recall any conversations with Defendant prior to reading him *Miranda* rights, and that they learned Defendant's identity sometime thereafter.

III. <u>Analysis</u>

The Government argues the officers' initial encounter with Defendant did not violate his Fourth Amendment right to be free from an unreasonable search and seizure because the encounter was consensual. Defendant contends the officers seized him in violation of the Fourth Amendment when they approached his car and asked him about the noise violation.

The Sixth Circuit has provided guidance on the parameters of consensual encounters in discussing the Fourth Amendment implications of law enforcement encounters with citizens:

> 'This Court has explained that there are three types of permissible encounters between the police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if nonconsensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause."
> . . .

Although '[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures' by approaching individuals in public places and asking questions, *United States v. Drayton*, 536 U.S. 194, 200, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), a consensual encounter becomes a seizure when 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *see also Florida v. Bostick*, 501 U.S. 429, 434-35, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ('[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage-as long as the police do not convey a message that compliance with their request is required.' (citations omitted)); *United States v. Peters*, 194 F.3d 692, 698 (6th Cir.1999) ('Absent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, the [officer's] request for additional identification and voluntarily given information from the defendant does not constitute a seizure under the Fourth Amendment.'). Factors that, if present, indicate that a seizure occurred include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870.

To justify a brief, investigative stop under *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an officer must point to specific, articulable facts that gave rise to a 'reasonable suspicion' that the suspect was engaged in criminal activity. *Id.* at 21, 88 S.Ct. 1868. 'A reasonable suspicion exists when, based on the totality of the circumstances, a police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."' *United States v. Baldwin*, 114 Fed.Appx. 675, 679 (6th Cir.2004) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The officer 'must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.' *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citations and internal quotation marks omitted).

*United States v. Gross*, 662 F.3d 393, 398-99 (6th Cir. 2011)(some citations omitted).

Both Officer Basaldua and Officer Kersten testified that, when Officer Basaldua initially approached Defendant's car, they had not activated the lights on their patrol car, and they did not block Defendant's exit. In addition, they testified that Offficer Basaldua was not brandishing a gun or baton, and Officer Basaldua testified that he did not touch Defendant or yell at him to

stop. Based on this undisputed testimony, the Court concludes that Officer Basaldua's initial encounter at Defendant's passenger window, and his statements to Defendant about the need to turn down his music, and the request for identification constitutes a consensual encounter. The evidence does not establish that a reasonable person in Defendant's position "would have believed he was not free to leave." *Mendenhall*, 446 U.S. at 554.

The Government argues that Officer Basaldua's subsequent request that Defendant exit the vehicle for a pat-down search was an investigative detention supported by reasonable suspicion that Defendant had a weapon on his person and had marijuana in his car. Defendant contends that it was not illegal for Defendant to possess a gun, and that the officers' testimony about smelling the odor of marijuana is not credible because it is inconsistent with their preliminary hearing testimony and with the Incident Report.

Officer Basaldua testified that he smelled marijuana when Defendant cracked the passenger window. Officer Kersten testified that he smelled the odor of marijuana when he approached the car a short time later. Although the officers have not consistently described the strength of the odor, they have testified consistently that they smelled the marijuana odor. Thus, the Court credits their testimony in that regard. Having detected the presence of marijuana, the officers had a reasonable suspicion that Defendant was engaged in criminal activity, and were justified in detaining him to investigate further.

As for the pat-down search of Defendant, "[w]hen an officer makes a *Terry* stop, he may also perform a precautionary search—known as a 'frisk' or 'pat down'—whenever he has 'reasonable suspicion' that the person searched may be armed and dangerous." *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *Knowles v. Iowa*, 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)). "Ultimately, the test is whether 'a reasonably prudent

[person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'" *Id.* (citing *United States v. Noble*, 762 F.3d 509, 521–22 (6th Cir. 2014)). Officer Basaldua testified he was concerned that Defendant might have a weapon based on his observation of Defendant moving his hands over his lap area, the possible presence of marijuana in the car, and Defendant's refusal to give identification. The Court is persuaded that these factors constitute reasonable suspicion supporting the pat-down search of Defendant. *See Pacheo,* 841 F.3d at 393-94 (factors supporting reasonable suspicion for pat-down search include fidgeting with pockets as if concealing something, and failure to obey officer's commands).

As for Defendant's statements, the Government argues that they are admissible either because they were volunteered, or they were made after Defendant knowingly and voluntarily waived his Fifth Amendment rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant argues the officers' testimony about the timing of the *Miranda* warnings is not credible because it has not been consistent, and Defendant could not understand the warnings because they were not given in Spanish.

The Fifth Amendment provides that an individual cannot be "compelled in any criminal case to be a witness against himself." To protect that right, the Supreme Court, in *Miranda,* held that suspects cannot be subjected to custodial interrogation until they have been advised of their rights. Unless law enforcement officers comply with this requirement, incriminating statements elicited from suspects in custody may not be admitted at trial. *Id.; United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).

When Defendant told Officer Basaldua he had a gun in his pants, he was not being "interrogated." "Interrogation" refers to express questioning or words or actions on the part of the police that they know are reasonably likely to elicit an incriminating response. *McKinney v.*

9

*Hoffner,* 830 F.3d 363, 370–71 (6th Cir. 2016) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). Defendant's statement was volunteered, and therefore, it does not violate *Miranda*.

As for Defendant's statement about the location of the marijuana, however, *Miranda* applies because Defendant was in custody and Officer Kersten explicitly asked Defendant about the location of the marijuana. The Government argues that the statement is admissible because Defendant waived his rights. To be valid, a waiver of *Miranda* rights must be knowing, intelligent, and voluntary. *United States v. Villa-Castaneda*, 2018 WL 5817074 (6th Cir. Nov. 6, 2018); *United States v. Al-Cholan*, 610 F.3d 945, 953-54 (6th Cir. 2010). "Language difficulties may impair the ability of a person in custody to waive his *Miranda* rights in a free and aware manner." *Al-Cholan,* 610 F.3d at 954 (quoting *United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (9th Cir. 1995)). The waiver inquiry, however, "should be examined 'primarily from the perspective of the police,' such that where '[the] police had no reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] *Miranda* waiver.'" *Al-Cholan,* 610 F.3d at 954 (quoting *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009)); *Villa-Castaneda,* 2018 WL 5817074, at *3.

Although English may not be Defendant's first language, the evidence adduced at the hearing indicates that he understood Officer Kersten's recitation of his rights. Both officers testified they had no reason to believe Defendant did not understand what they were saying to him in English. As for Defendant's argument about inconsistencies regarding the timing of the *Miranda* warnings, the Court credits Officer Kersten's testimony that Defendant answered the question about the location of the marijuana *after* hearing his *Miranda* rights, and after voluntarily waiving them.

Similarly, the Court concludes Defendant's statements in response to the gun questionnaire are admissible. Officer Basaldua testified that Defendant made the statements after Officer Basaldua recited Defendant's *Miranda* rights a second time, and after Defendant agreed to waive those rights.

As for Defendant's challenge to the search of his vehicle, the Supreme Court has long recognized an exception to the warrant requirement with regard to automobile searches. *United States v. Smith,* 510 F.3d 641, 647 (6th Cir. 2007). The exception "is justified not only by the exigency created by the 'ready mobility' of vehicles, but also by the lesser expectation of privacy operators have in their vehicles." *Id.*, at 650. Under the "automobile exception," officers may conduct a warrantless search of a vehicle if they have probable cause to believe the vehicle contains evidence of a crime. *Id.,* at 647. Probable cause exists where "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Spillman,* 2018 WL 2046137, at *2 (6th Cir. Mar. 19, 2018) (quoting *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002)).

Having heard Defendant's statement that the marijuana was in the backpack in the car, Officer Kersten had probable cause to believe the backpack contained contraband. Therefore, his search of the car for the backpack, and his subsequent seizure of the backpack and marijuana, were valid under the automobile exception.

For these reasons, the Court concludes that Defendant's challenge to the admissibility of the firearm, marijuana, and his statements are without merit. Accordingly, Defendant's Motion to Suppress Evidence (Doc. No. 24) is **DENIED.**

It is so **ORDERED**.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　WILLIAM L. CAMPBELL, JR.
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE